UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| YAHYA (JOHN) LINDH, *on his own behalf and on behalf of those similarly situated*,<br><br>*Plaintiff*,<br><br>vs.<br><br>DIRECTOR, FEDERAL BUREAU OF PRISONS, *in his official capacity*.<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>) No. 2:14-cv-151-JMS-WGH<br>)<br>)<br>)<br>)<br>) |

## ORDER ON MOTION FOR CLASS CERTIFICATION

Presently pending before the Court is Plaintiff Yahya (John) Lindh's Motion to Certify Class. [Filing No. 6.] Mr. Lindh is a prisoner in the Communications Management Unit ("CMU") of the Terre Haute Federal Correctional Institution. [Filing No. 1 at 1.] He brings a claim against Defendant pursuant to the Religious Freedom Restoration Act ("RFRA"), seeking injunctive relief from Defendant's policy that "Islamic inmates may not hem or wear their pants above the ankle." [Filing No. 1 at 1.] Mr. Lindh seeks to represent a class defined as "all male Muslim prisoners confined within the Bureau of Prisons." [Filing No. 1 at 2.] Alternatively, he proposes a narrowed class that includes all male Muslim prisoners confined within the Bureau of Prisons who identify, or will identify, themselves as being required by their religious beliefs to wear their pants above the ankle. [Filing No. 26 at 6.] Defendant opposes class certification. [Filing No. 16.] For the reasons that follow, the Court denies Mr. Lindh's Motion to Certify Class. [Filing No. 6.]

### I.
### STANDARD OF REVIEW

It is the plaintiff's burden to prove that the class should be certified. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The Court "may certify a class of plaintiffs if the putative

class satisfies all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the conditions of Rule 23(b)." *[Id.](#)* The plaintiff also must show that the class is "indeed identifiable as a class." *[Id.](#)*

The primary question when ruling on class certification is "whether plaintiff is asserting a claim which, assuming its merit, will satisfy the requirements of Rule 23." *[Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 675 (7th Cir. 2001)](#)*. But Rule 23 "does not set forth a mere pleading standard." *[Parko v. Shell Oil Co., 739 F.3d 1083, 1085 (7th Cir. 2014)](#)*, *reh'g denied*. "Rather, when factual disputes bear on issues vital to certification . . . the court must receive evidence and resolve the disputes before deciding whether to certify the case." *[Id.](#)*; *see also [Szabo, 249 F.3d at 676](#)* (when deciding whether to certify a class, the Court must "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues).

Mr. Lindh seeks to certify a class and obtain injunctive relief in this action pursuant to Rule 23(b)(2). [[Filing No. 7 at 2](#).] Members of a Rule 23(b)(2) class do not receive notice and cannot opt out. *[Rahman v. Chertoff, 530 F.3d 622, 626 (7th Cir. 2008)](#)*. A class may be certified under that section "only if the party opposing the class acted or refused to act on grounds that apply generally to the class." *[Id. at 627](#)*.

## II.
### BACKGROUND

Mr. Lindh is a prisoner housed in the CMU of the Terre Haute federal prison. [[Filing No. 1 at 1](#); [Filing No. 15 at 1](#) (admitting allegation).] It is the policy of the Federal Bureau of Prisons ("BOP") that inmates may not hem or wear their pants above the ankle. [[Filing No. 1 at 1](#); [Filing No. 15 at 1](#) (admitting that "it is the policy of the [BOP] that inmates may not hem or wear their pants above the ankle").] Mr. Lindh is Muslim and alleges that "it is a clear tenant of Islam that Muslim men are prohibited from wearing pants below their ankles." [[Filing No. 1 at 1](#); [Filing No.](#)

2

15 at 1 (denying this allegation).] Mr. Lindh has been disciplined for wearing his pants above his ankles. [Filing No. 1 at 4; Filing No. 15 at 4 (admitting allegation).] Mr. Lindh has exhausted his administrative remedies without Defendant altering the policy at issue. [Filing No. 1 at 4; Filing No. 15 at 4 (admitting allegation).]

In May 2014, Mr. Lindh filed a putative class action against Defendant. [Filing No. 1.] He contends that Defendant's policy of not allowing him to wear his pants above the ankle imposes a substantial and unjustified burden on his religious exercise, violating RFRA. [Filing No. 1 at 1 (citing 42 U.S.C. § 2000bb-1).] He seeks injunctive relief from the challenged policy on behalf of himself and the putative class members. [Filing No. 1 at 1.] Mr. Lindh proposes a class defined as "all male Muslim prisoners confined within the Bureau of Prisons." [Filing No. 1 at 2.] He now requests that the Court certify his proposed class, [Filing No. 6], which Defendant opposes, [Filing No. 16].

### III.
#### DISCUSSION

In addition to the class certification prerequisites specifically enumerated in Federal Rule of Civil Procedure 23, it is the plaintiff's burden to prove "that the class is indeed identifiable as a class." *Oshana*, 472 F.3d at 513. The Court will address that requirement first, and then turn to the other class certification requirements set forth in Rule 23.

**A. Whether an Identifiable Class Exists**

In his opening brief, Mr. Lindh proposes a class of "all male Muslim prisoners confined within the Bureau of Prisons." [Filing No. 7 at 2.] He contends that this proposed class is identifiable and may be obtained by reference to objective criteria. [Filing No. 7 at 3.] Although Mr. Lindh acknowledges that a class "cannot be made up of membership contingent on any specific state of mind," he contends that his proposed class it still identifiable because it "is based on an

3

objective criterion that is administratively feasible—the religious preference noted by male prisoners within the BOP." [Filing No. 7 at 3.]

In response, Defendant disagrees that Mr. Lindh's proposed class is sufficiently identifiable. [Filing No. 16 at 4-8.] Defendant claims that not all Muslims hold the same theological views regarding the required length of their pants. [Filing No. 16 at 5.] As support, Defendant submits an affidavit from Osama Said, a religious leader of the Muslim faith employed by the BOP. [Filing No. 16-1.] Because Mr. Said attests that not all Muslims hold the same theological views on this issue, Defendant argues that Mr. Lindh's proposed class "sweeps too broadly" and cannot be properly defined by objective criteria because the claim at issue hinges on inherently subjective questions regarding sincerely held religious beliefs. [Filing No. 16 at 5-6.]

In reply, Mr. Lindh emphasizes that Defendant has not submitted any evidence from Muslims incarcerated in the BOP who do not believe that they have to wear their pants above their ankles. [Filing No. 26 at 4.] He concedes that it is "certainly possible that there are a number who would continue to wear their pants long even if Mr. Lindh prevails in this action," but he argues that "[e]very Muslim prisoner is potentially harmed by the challenged policy." [Filing No. 26 at 4-5.] Mr. Lindh also points out that his proposed class could easily be redefined as "all male Muslims confined within the Bureau of Prisons who have identified themselves, or who will identify themselves, to the Bureau of Prisons as being required to wear their pants above their ankles in order to exercise their religious beliefs." [Filing No. 26 at 6.]

To obtain class certification, "[t]he plaintiff must . . . show . . . that the class is indeed identifiable as a class." *Oshana*, 472 F.3d at 513. When "there is no way to know or readily ascertain who is a member of the class," the class "lacks the definiteness required for class certification." *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 495 (7th Cir. 2012).

4

"A sufficiently definite class exists if its members can be ascertained by reference to objective criteria." *Wallace v. Chicago Hous. Auth.*, 224 F.R.D. 420, 425 (N.D. Ill. 2004) (citation omitted). "Cases have recognized the difficulty of identifying class members whose membership in the class depends on each individual's state of mind." *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981); *see also Wallace*, 224 F.R.D. at 425 ("A class description is insufficient, however, if membership is contingent on the prospective member's state of mind."). The class definition must be sufficiently precise to make it "administratively feasible for the Court to determine whether a particular individual is a member of the proposed class." *Wallace*, 224 F.R.D. at 425. The Seventh Circuit Court of Appeals has rejected certifying "across-the-board classes" pursuant to Rule 23(b)(2) as "a vehicle for nationwide injunctive relief." *Rahman v. Chertoff*, 530 F.3d 622, 626 (7th Cir. 2008); *see also Jamie S.*, 668 F.3d at 496 (noting that previous "tolerance of a wildly indefinite class definition under Rule 23 is no longer the norm. We have noted that . . . is a relic of a time when the federal judiciary thought that structural injunctions taking control of executive functions were sensible. That time is past.") (quotation omitted).

Mr. Lindh asserts a RFRA claim regarding Defendant's policy that he may not wear his pants above his ankles. [Filing No. 1.] RFRA "prohibits the federal government from placing substantial burdens on 'a person's exercise of religion' unless it can demonstrate that applying the burden is the 'least restrictive means of furthering . . . [a] compelling governmental interest.'" *Korte v. Sebelius*, 735 F.3d 654, 682 (7th Cir. 2013) (quoting 42 U.S.C. § 2000bb-1(a)-(b)), *cert. denied*. At a minimum, a substantial burden exists when the government compels a religious person to "perform acts undeniably at odds with fundamental tenets of [his] religious beliefs." *Korte*, 735 F.3d at 682 (citing *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972)). "Checking for sincerity and religiosity is important to weed out sham claims." *Korte*, 735 F.3d at 683.

The Court agrees with Defendant that Mr. Lindh's proposed class definition is not sufficiently definite. He seeks to represent a class of "all male Muslim prisoners confined within the Bureau of Prisons," [Filing No. 6 at 1], but there is evidence in the record from a Muslim religious leader that there "is no uniformity of opinion or practice in the Muslim jurisprudence regarding the claims made by [Mr.] Lindh" regarding the required pant length, [Filing No. 16-1 at 3]. The Court recognizes that Mr. Lindh submitted numerous declarations with his reply brief from other Muslim inmates attesting that they also believe that they are required by Islam to wear their pants above their ankles.[1] [*See* Filing No. 26-4 to Filing No. 26-48.] But Defendant has not disputed that Mr. Lindh and other prisoners may hold a sincerely held religious belief regarding the length of their pants. Instead, Defendant contends, and submits supporting evidence, that not all Muslims hold this same belief. The affidavits submitted with Mr. Lindh's reply do not address this point, which is crucial since Mr. Lindh seeks to represent a class of "*all* male Muslim prisoners confined within the [BOP]" and it is his burden to prove that the class should be certified. [Filing No. 6 at 1 (emphasis added).] If the Court were to certify a class that included prisoners who did not sincerely hold the religious belief at issue, the class would improperly include members who could not prove an element of the asserted RFRA claim. *See Oshana*, 472 F.3d at 513-14 (affirming district court's decision not to certify class because some members of proposed class would be unable to prove elements of claim). Thus, certification is inappropriate.

---

[1] The Court reminds counsel that new evidence should not be submitted with a reply and that it may be stricken. *Silver Streak Indus., LLC v. Squire Boone Caverns, Inc.*, 2014 WL 220682, at *1 (S.D. Ind. 2014). Mr. Lindh may believe that he was replying to arguments raised in Defendant's response, but the Court finds that to be a risky position here, particularly since it is a plaintiff's burden to prove that a class should be certified. Mr. Lindh's opening brief was rather pro forma, stating conclusions but supported by little evidence. Reply is not the time to provide the evidentiary support that is required in the first place. Nevertheless, Defendant did not object, and the Court will consider the belated declarations in this case, however, because they does not affect the ultimate result of the Mr. Lindh's motion.

In his reply brief, Mr. Lindh alternatively proposes redefining the class definition to include "all male Muslims confined within the [BOP] who have identified themselves, or who will identify themselves, to the [BOP] as being required to wear their pants above their ankles in order to exercise their religious beliefs." [Filing No. 26 at 6.] This narrowed definition, however, still fails because class membership would be based on a putative class member's state of mind. As Mr. Lindh acknowledges in his opening brief, a class "cannot be made up of membership contingent on any specific state of mind." [Filing No. 7 at 3 (citing case law).] Mr. Lindh also acknowledges in his opening brief that the "class must be ascertainable by reference to objective criteria." [Filing No. 7 at 3 (citing case law).] There is no evidence in the record, however, that members of the narrowed class would be ascertainable by reference to objective criteria—*i.e.*, that male Muslim prisoners ever specifically disclose to the BOP their position as to whether their understanding of Islam requires them to wear their pants above their ankles. In fact, the parties' Stipulation regarding the BOP's inability to produce information regarding the number of male Muslim prisoners who have been disciplined for wearing their pants above the ankle suggests otherwise. [Filing No. 25.] Because Mr. Lindh has not proposed a sufficiently definite class, his request for class certification must be denied.

**B. Federal Rule of Civil Procedure 23(a)**

Although the Court has already concluded that Mr. Lindh has not proposed a sufficiently definite class for purposes of certification, it will summarily address the other certification factors set forth in Rule 23.

*1) Numerosity*

Mr. Lindh contends that his putative class is so numerous that joinder of all members is impracticable. [Filing No. 7 at 3-5.] He asserts that there are more than 174,000 prisoners in BOP

7

custody, that more than 93% are male, and that approximately 6% are Muslim. [Filing No. 7 at 4.] Thus, Mr. Lindh calculates that there are approximately 9,709 members of the putative class he seeks to represent—all male Muslim prisoners confined within the BOP. [Filing No. 7 at 4.]

In response, Defendant argues that Mr. Lindh has not shown numerosity. [Filing No. 16 at 8-10.] He relies on his arguments regarding the lack of ascertainability of the class, specifically that because it is not ascertainable, numerosity should not be presumed just because Mr. Lindh asserts a civil rights claim seeking injunctive relief. [Filing No. 16 at 9-10.]

In reply, Mr. Lindh submits declarations from 45 Muslim prisoners who he contends share his religious belief that they should not wear pants below their ankles, but that the BOP policy at issue requires them to do so. [Filing No. 26 at 10 (referencing Filing No. 26-4 to Filing No. 26-48).]

The Court can only certify a class that "is so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002) (collecting cases); *Hubler Chevrolet, Inc. v. GMC Corp.*, 193 F.R.D. 574, 577 (S.D. Ind. 2000). Geographic dispersion is one of the factors considered when evaluating the impracticability of joinder of all class members. *Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 506 (S.D. Ind. 1999).

The 45 declarations submitted by Mr. Lindh confirm that there are Muslim inmates geographically dispersed throughout the United States who share Mr. Lindh's sincerely held religious belief that they are required to wear their pants above the ankle. [*See* Filing No. 26-4 to Filing No. 26-48.] Thus, although the Court has concluded that Mr. Lindh has not proposed a

sufficiently definite class, he has submitted sufficient evidence to show that his proposed class meets the numerosity requirement of Rule 23.

### *2) Commonality & Typicality*

Mr. Lindh argues that his claim presents a common question of law—whether the Defendant's policy regarding pants length violates RFRA. [Filing No. 7 at 6-7.] Mr. Lindh contends that his claim is typical of the claims of the putative class members who he seeks to represent because "[t]here is a uniform policy affecting all class members." [Filing No. 7 at 7.]

In response, Defendant applies his arguments regarding the lack of ascertainability to the commonality and typicality requirements. [Filing No. 16 at 10-12.] Defendant argues that Mr. Lindh cannot show commonality because "he cannot show that the class claims arise from the same legal or remedial theory." [Filing No. 16 at 11.] Defendant specifically contends that "he has not shown (and cannot show) that the policy similarly burdens the religious practices of all Muslims in the Bureau of Prisons." [Filing No. 16 at 11.] Defendant argues that Mr. Lindh cannot satisfy typicality for similar reasons because the proposed class members do not necessarily have the same beliefs as Mr. Lindh; thus, his claim is not typical because some of the putative class members would have no injury. [Filing No. 16 at 12-13.]

In reply, Mr. Lindh claims that if his proposed class is amended to only include male Muslim prisoners who identify, or will identify, themselves as being required by their religious beliefs to wear their pants above the ankle, typicality and commonality are met. [Filing No. 26 at 11-12.] He emphasizes that Defendant's policy "is a common scheme affecting all class members and the class and Mr. Lindh have the same essential characteristics." [Filing No. 26 at 11.]

A class action requires "questions of law or fact common to the class," Fed. R. Civ. Pro. 23(a)(2), and the plaintiff's claims or defenses must be "typical of the claims or defenses of the

9

class[,]" Fed. R. Civ. Pro. 23(a)(3). Commonality is satisfied when there is a "common nucleus of operative fact," that is, a "common question which is at the heart of the case." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). All questions of fact or law need not be identical; rather, the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009). The commonality and typicality requirements tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Although typicality may exist even if there are factual distinctions between the claims of the named plaintiffs and other class members, the requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted). "[S]uperficial common questions—like . . . whether each class member 'suffered a violation of the same provision of law'—are not enough." *Jamie S.*, 668 F.3d at 497 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)). Rather, commonality requires "that the class members have suffered the same injury," *Jamie S.*, 668 F.3d at 497, and typicality requires that plaintiff's claims or defenses must be "typical of the claims or defenses of the class[,]" Fed. R. Civ. Pro. 23(a)(3).

The Court agrees with Defendant that deficiencies in the ascertainability of Mr. Lindh's proposed class adversely affect the existence of commonality and typicality as well. The superficial common question of law that Mr. Lindh proposes—whether Defendant's policy regarding the length of Muslim prisoners' pants violates RFRA—is insufficient because he seeks

10

to represent all male Muslim prisoners housed by the BOP and the undisputed evidence in the record is that not all male Muslim prisoners share his religious belief on this issue. [Filing No. 16-1.] Commonality requires "that the class members have suffered the same injury," *Jamie S.*, 668 F.3d at 497, but that cannot happen with the original class that Mr. Lindh proposes. Accordingly, Mr. Lindh has not met his burden to show that his proposed class meets the commonality and typicality requirements of Federal Rule of Civil Procedure 23(a)(3).

The Court also concludes that Mr. Lindh's narrowed class definition—all male Muslims confined within the BOP who have identified themselves, or who will identify themselves, to the BOP as being required to wear their pants above their ankles in order to exercise their religious beliefs—still does not meet the commonality and typicality requirements. Analyzing individualized factors to determine the parameters of individual claims is the antithesis of typicality. *See Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 469 (N.D. Ill. 2009) ("Where, as here, a court would have to examine numerous individualized factors to determine the parameters of individual claims, the typicality requirement is not met.") (citing *Payton v. Cnty. of Carroll*, 473 F.3d 845, 854 (7th Cir. 2007)). Additionally, Mr. Lindh has been disciplined for wearing his pants above his ankles. [Filing No. 1 at 4; Filing No. 15 at 4 (admitting allegation).] But of the 45 declarations that he submits from other prisoners, only two assert that they have also been disciplined for violating the policy at issue. [Filing No. 26-29; Filing No. 26-39.] Thus, Mr. Lindh's claim may not "have the same essential characteristics as the claims of the class at large" because he may be entitled to relief that differs from most putative class members. *Muro*, 580 F.3d at 492. For these reasons, the Court concludes that even considering the narrowed class definition that Mr. Lindh proposes, he has failed to satisfy the commonality and typicality requirements of Rule 23.

11

*3) Adequacy of Representation*

Federal Rule of Civil Procedure 23(a)(4) requires the Court to find that "the representative parties will fairly and adequately protect the interests of the class." Mr. Lindh asserts that he and his counsel are adequate representatives for this class action. [Filing No. 7 at 7-8.] Defendant does not object in his response. [Filing No. 16.]

The adequacy inquiry is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation marks omitted). To adequately represent the class, the representative plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation and quotation marks omitted).

The Court has no reason to doubt the adequacy of Mr. Lindh's counsel. However, "[t]he adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626 n.20 (citation and quotation marks omitted). For the same reasons the Court concluded that the commonality and typicality criteria are not met, the Court concludes that Mr. Lindh has not met his burden with this factor.

**C. Federal Rule of Civil Procedure 23(b)(2)**

Federal Rule of Civil Procedure 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Pro. 23(b)(2). Mr. Lindh claims that his proposed class should be certified pursuant to this rule. [Filing No. 7 at 8.] Defendant disagrees. [Filing No. 16 at 13-14.]

The requirements of Rule 23(a) are "prerequisites" to certification under Rule 23(b). *Szabo*, 249 F.3d at 676. "The key to the [Rule](b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 131 S. Ct. at 2557 (citation and quotation marks omitted). Moreover, "[t]he injunctive or declaratory relief sought must be final to the class as a whole." *Jamie S.*, 668 F.3d at 499 (citation and quotation marks omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart*, 131 S. Ct. at 2557.

The Court already has concluded that Mr. Lindh has not carried his burden to identify a sufficiently definite class and has failed to meet three of the four requirements under Rule 23(a). This weighs against certification pursuant to Rule 23(b)(3) since the requirements of Rule 23(a) are "prerequisites." *Szabo*, 249 F.3d at 676. Mr. Lindh maintains, however, that because he "seeks injunctive relief to prevent future alleged illegal deprivations of civil rights," he asserts a "prime example" of a proper class under Rule 23(b)(2). [Filing No. 26 at 13 (citing *Ind. Prot. & Advocacy Servs. Comm'n v. Comm'r, Indiana Dep't of Corr.*, 2010 WL 1737821, at *2 (S.D. Ind. 2010)).] While at first blush Mr. Lindh appears to seek injunctive relief from a uniform policy that applies to the putative class members, the undisputed evidence is that not all Muslims share the religious

13

belief at issue, class membership would be contingent on a specific state of mind, and the class members would not be ascertainable by reference to objective criteria. It is also undisputed that Mr. Lindh has been disciplined for wearing his pants above his ankles, [Filing No. 1 at 4; Filing No. 15 at 4 (admitting allegation)], but that only two of the 45 declarants assert that they have also been disciplined for violating the policy at issue, [Filing No. 26-29; Filing No. 26-39]. Thus, it is possible that Mr. Lindh may be entitled to certain relief that most other putative class members are not. For these reasons, the Court concludes that certification under Rule 23(b)(2) is inappropriate.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **DENIES** Mr. Lindh's Motion to Certify Class. [Filing No. 6.] The Court requests that the assigned Magistrate Judge set a case management conference with the parties. The Court also requests that the Clerk docket the applicable Practices and Procedures in this action.

January 14, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF**:

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Jonathan A. Bont
UNITED STATES ATTORNEY'S OFFICE
jonathan.bont@usdoj.gov

14

Thomas Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov